IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH ROGERS | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 10254 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CHICAGO BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Rogers has filed a four count complaint against her employer, Chicago Board of Education, alleging discrimination. Plaintiff alleges that she was discriminated against because of her disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA") (Counts I and II), because of her race, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. ("Title VII") (Count III), and because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a. ("ADEA") (Count IV)[1]. Defendant has moved for summary judgment. For the reasons described below, defendant's motion is granted.

## FACTS[2]

Plaintiff, an African-American female who is more than fifty years old, began her career with defendant in 1994. Plaintiff worked at Patrick Henry Elementary School ("Patrick Henry")

---

[1] In her complaint, plaintiff mistakenly alleged age discrimination in violation of Title VII. Plaintiff explains that this was a typographical error.

[2] The following facts are, unless otherwise specified, undisputed and taken from the parties' Local Rule 56.1 statements, responses, and attached exhibits.

as a teacher's assistant,[3] mostly working with special needs children, starting in the 1995–1996 school year until the 2013–2014 school year. In the 2010–2011 school year plaintiff began working with a special needs student, "E." Plaintiff was still "attached" to E in the 2013–2014 school year, when E was in the third grade. Plaintiff's job was to stay with E from the time E arrived at school in the morning until she left in the afternoon, including during lunch and recess. Plaintiff sat with E in the classroom to help her with her assignments and escorted her to other areas of the school as needed. E had both learning disabilities and behavioral issues. For example, E was a "runner" and would pull and tug plaintiff in various directions. E would sometimes break free from plaintiff, who would then have to chase E down. Additionally, E was aggressive at times and would need to be held to keep her from hurting herself or others. E was also in the process of toilet training during the 2013–2014 school year, which meant that plaintiff had to change her diaper approximately once a day. In addition to working with E, plaintiff was responsible for some administrative duties, like organizing books and making copies.

On October 4, 2013, plaintiff underwent spinal surgery for a serious medical condition. Plaintiff initially took twelve weeks of leave under the Family Medical Leave Act ("FMLA"), but defendant extended that leave to January 21, 2014. Plaintiff did not request an extension of leave prior to it running out in January 2014. Plaintiff did not communicate with defendant or Patrick Henry's principal, Januario Gutierrez, regarding her leave until she submitted a return to

---

[3] According to defendant, plaintiff's job title was "paraprofessional" and she performed the duties of a special education classroom assistant, not a teacher's assistant. Although the parties disagree as to plaintiff's title, there is no disagreement as to her job duties. Additionally, Patrick Henry's principal, Januario Gutierrez, testified in his deposition that plaintiff was paid from special education funds and was therefore required to perform the duties of a special education teaching assistant regardless of her title. Consequently, her title is immaterial to the court's analysis.

work request form on February 11, 2014. One component of that form was a doctor's note, which stated that plaintiff could return to work on March 1, 2014, but only with the following restrictions: "Light duty, 10–15 lbs, no bending, lifting, twisting, or sitting on the floor." Those restrictions were to remain in place until June 1, 2014.

Plaintiff's return to work request form was sent to defendant's "Talent Office" and Delila Bentley, defendant's Equal Opportunity Compliance Office ("EOCO") administrator. Shortly after that, Brian Eichhorn from defendant's Talent Office contacted Gutierrez to discuss plaintiff's restrictions. Gutierrez informed Eichhorn that Patrick Henry did not have any "light duty" positions at all, and that it did not have any other positions available. Eichhorn relayed this to Bentley on February 27, 2014. Bentley contacted plaintiff and Gutierrez separately to discuss plaintiff's restrictions on March 3, 2014. Gutierrez informed Bentley that the restrictions would not be conducive to plaintiff's position, particularly her attachment to E. After speaking with plaintiff on March 3, 2014, Bentley emailed plaintiff information about submitting a request for an accommodation under the ADA and attached the forms necessary to submit such a request. Plaintiff returned those forms to Bentley on March 13, 2014. On the Request for Reasonable Accommodation Form, plaintiff requested the following accommodations: "light duty, no lifting more than 10-15 lbs, no bending, twisting or sitting on the floor." Plaintiff also listed the following impairments: "when lifting, severe pain in neck and shoulder"; "bending - dizziness"; and "twisting or sitting causes severe pain right now." Plaintiff added that, "I work with special education their (sic) are times when you have to down (sic) on the floor and run after them. With my restrictions that would make it hard for me to do."

On March 19, 2014, Bentley contacted plaintiff again to discuss plaintiff's job duties. Plaintiff relayed that she worked with special education students with behavior disorders, sometimes had to catch students when they were having tantrums, and worked with one student who wore a diaper. Plaintiff also relayed that her doctors did not want her to return to work, but she pushed them to allow her to return. At the end of the conversation, plaintiff informed Bentley that she would apply for another leave of absence under the FMLA. Defendant was granted that leave of absence with school-level (as opposed to district-level) position protection until April 14, 2014. Plaintiff's leave and position protection were ultimately extended to April 30, 2014, as an ADA accommodation.[4]

Plaintiff submitted another return to work request form on April 2, 2014. This time, plaintiff was released to work on May 1, 2014, under the following conditions: "For one year patient needs to frequently change positions. No prolog[ed] sitting or standing, no bending, twisting, reaching, and squatting for six months." That form was also sent to defendant's Talent Office and Bentley. Bentley emailed plaintiff on April 22, 2014, regarding plaintiff's restrictions, and instructed her to contact Bentley if she was seeking an ADA accommodation. Plaintiff did not contact Bentley or anyone else regarding the April 2, 2014, return to work request form.

---

[4] According to defendant, plaintiff sought this extension as an ADA accommodation. Plaintiff denies that she requested further leave as an accommodation. Bentley sent plaintiff both an email and a letter on April 2, 2014, in response to her March 13, 2014, request for an ADA accommodation. See Pl. Ex. S. The email and letter explained that plaintiff was being granted an extension of leave with job protection as an ADA accommodation and that plaintiff would have to return to work by April 30, 2014. The email and letter also informed plaintiff of her right to appeal the EOCO's decision. Plaintiff denies receiving the email and letter. Plaintiff also denies following up with anyone in any way regarding her April 2 return to work request.

4

As of May 12, 2014, plaintiff had not returned to work or contacted defendant, Bentley, Gutierrez, or anyone else to request an extension of leave, which had expired April 30, 2014. At that point, defendant's Talent Office removed plaintiff from the position number she held at Patrick Henry, closed that position, and moved plaintiff into a "bucket," or district-wide position, so that she could remain on paid leave.[5] Plaintiff subsequently submitted another return to work request form on June 19, 2014.[6] Plaintiff received no response to this request and did nothing to follow up on it until some point in August 2014, when she visited Gutierrez to let him know that she was ready to return to work. At that point Gutierrez informed plaintiff that her position had been closed. Plaintiff filed a claim with the Equal Employment Opportunity Commission on September 11, 2014, alleging discrimination based on age, race, and disability. Plaintiff returned to work for defendant at Hammond Elementary School as a special education classroom assistant on February 11, 2015. She retired on June 22, 2016.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts

---

[5] That leave expired on December 12, 2014.

[6] Defendant denies receiving this form.

5

showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II. Analysis

To establish a violation of the ADA, plaintiff must demonstrate that: "(1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) [defendant] took an adverse job action against her because of her disability or failed to make a reasonable accommodation." Teague v. Nw. Mem'l Hosp., 492 Fed. Appx. 680, 683 (7th Cir. 2012).

### A. Plaintiff Was Not Qualified to Perform Her Essential Job Functions

Defendant argues that plaintiff was not a qualified individual with a disability[7] because she could not perform the essential job functions related to taking care of E and ensuring her safety. Plaintiff acknowledged her limitations, noting on her ADA accommodation request form that she experienced severe pain when lifting, sitting, and twisting, and that she experienced dizziness when bending. She also acknowledged that getting on the floor and running after students - two activities that she engaged in regularly with E - would be difficult for her to do.

---

[7] The ADA defines "qualified individual" as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Despite her admissions, plaintiff argues that she was a qualified individual because: (1) she could have performed the essential job functions of a teacher's assistant; (2) the school environment was such that there were always teachers or other school personnel around who could help with E; and (3) she was still capable of performing "essential" administrative tasks, as another teacher's assistant had done after the special needs student that she was attached to transferred to another school. Each of these arguments fails.

First, plaintiff's argument that she was capable of performing the essential job functions of a teacher's assistant, even if true, misses the point. Plaintiff and defendant disagree as to whether plaintiff's title was teacher's assistant or special education classroom assistant, but they do not disagree as to what functions plaintiff actually performed. Plaintiff fully acknowledges the responsibilities she had in relation to E and, in her deposition, agreed that all of the job duties of a special education classroom assistant applied to her with the exception of one: assisting students in wheelchairs, because E was not in a wheelchair. Accordingly, to argue that she could perform the duties of a teacher's assistant is not to say that she could perform the job duties for which she was responsible on a daily basis. The court rejects this argument.

In the alternative, plaintiff argues that other school employees could have assisted with the more physical aspects of taking care of E. Plaintiff further argues that those physical duties were not essential because Patrick Henry operated without a substitute caretaker for E in the two weeks after plaintiff left and before a substitute could be retained. This argument also fails. First, plaintiff's argument asserts that *other* employees could perform her essential job duties, not that she could. Second, the fact that Patrick Henry was able to make do without a substitute while searching for one, again, does nothing to demonstrate that plaintiff could have performed

7

her essential job duties. It also does nothing to support plaintiff's argument that those duties were not essential. In fact, taken to its conclusion, plaintiff's argument suggests that all of her duties were unessential and that her position was completely unnecessary. Plaintiff cannot have intended this meaning and the court rejects her argument.

Finally, plaintiff argues that, even if she could not perform the more physical tasks required of her, she "would have been able to perform her 'essential' administrative tasks until her restriction were lifted similar to those [another teacher's assistant] performed after her student left Patrick Henry." This argument, too, fails for multiple reasons.

First, plaintiff's classification of her administrative duties as "essential" does not make them so. Plaintiff acknowledged in her deposition that she was with E from the time E arrived at school until she was dismissed, with the exception of twenty minutes, during which plaintiff ate lunch while E received one-on-one instruction from her teacher. Plaintiff also acknowledged that she spent "[m]aybe an hour" making copies. Given that ratio, even if the court assumes that plaintiff's administrative duties were in fact "essential," they could not possibly have been the only essential tasks for which she was responsible.

Second, the fact that another teacher's assistant was given additional administrative tasks during a time when the special needs student she was attached to was no longer at Patrick Henry is irrelevant. E had not transferred out of Patrick Henry and still required care. It was plaintiff's job to provide that care. Plaintiff's argument, again, does nothing to demonstrate that she was capable of performing her essential job duties. Her argument fails.

### B. Defendant Did Not Fail to Accommodate Plaintiff's Disability

According to plaintiff, defendant failed to accommodate her disability by failing to: (1) engage in the "interactive process" to determine appropriate accommodations; and (2) determine if a reasonable accommodation could be made. To support her first allegation plaintiff argues that the interactive process "should have entailed working with the Plaintiff to produce a reasonable solution if one was available." The problem with plaintiff's argument is that the record indicates that defendant did just that. As detailed above, once Bentley received plaintiff's February 11, 2014, return to work request form, Bentley reached out to plaintiff a number of times to discuss her limitations, job duties, and accommodations. Plaintiff acknowledged both on her ADA accommodation request form and in conversation with Bentley the difficulties she would suffer while doing her job with her physical restrictions. Plaintiff also acknowledged that she pushed her doctors to let her return to her job with no restrictions, and that they refused. After speaking with Bentley on March 19, 2014, plaintiff applied for an extension of her medical leave. The record indicates that Bentley extended that leave to April 30, 2014, as an ADA accommodation.

As for plaintiff's April 2, 2014, return to work request form, the record indicates that it was plaintiff who failed to engage in the interactive process. Despite receiving an email instructing her to contact Bentley if she was seeking an ADA accommodation, plaintiff failed to contact Bentley, or anyone else, to discuss how her medical restrictions would impact her ability to perform her job. Plaintiff never sought additional accommodations.

Additionally, even if defendant had not engaged in the interactive process, a failure to do so "cannot give rise to a claim for relief . . . if the employer can show that no reasonable

9

accommodation was possible." Dargis v. Sheahan, 526 F.3d 981, 988 (7th Cir. 2008) (quoting E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789, 805 (7th Cir. 2005)). Plaintiff argues that defendant cannot make such a showing because Bentley never determined if plaintiff could perform the essential duties of her position or if another position was available for plaintiff. Plaintiff is wrong. The record indicates that Bentley made both of these determinations. After plaintiff submitted her return to work request form, Eichhorn asked Gutierrez if he had any positions available, whether they be "light duty" or otherwise. Gutierrez informed Eichhorn that Patrick Henry did not have any "light duty" positions at all, and that it did not have any other positions available. Eichhorn relayed this to Bentley on February 27, 2014. Bentley contacted both plaintiff and Gutierrez to discuss plaintiff's restrictions on March 3, 2014. Gutierrez informed Bentley that the restrictions would not be conducive to plaintiff's position, particularly her attachment to E. Bentley reviewed plaintiff's job description and agreed that plaintiff could not perform her job with her restrictions. And common sense indicates that this is so.

Plaintiff's argument that defendant's failure to assign her light duty or to another position resulted in a failure to reasonably accommodate her is unavailing for two reasons. First, "[i]t is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." Sears, Roebuck & Co., 417 F.3d at 802 (internal quotations omitted). Defendant provided a reasonable accommodation by extending plaintiff's school-level position protection for nearly six months and keeping her on paid leave well after that. Defendant was under no obligation to allow plaintiff to return to her position on light duty, which would have required a reallocation of the many duties that plaintiff was responsible for, but could not perform. See Peters v. City of Mauston, 311 F.3d

10

835 (7th Cir. 2002) (an accommodation request is unreasonable where "it requires another person to perform an essential function of [the] job").

Second, the record indicates that, other than plaintiff's position, there were no available positions at Patrick Henry, and "a worker cannot demand that his employer give him a job for which there is no vacancy without shifting the worker who has that job to another job in order to create a vacancy for the disabled worker." Dargis, 526 F.3d at 988 (internal quotations omitted); see also Jackson v. City of Chicago, 414 F.3d 806, 813 (7th Cir. 2005) ("It is the plaintiff's burden to show that a vacant position exists for which she was qualified. If such a position is available, then the court may consider whether failure to provide that accommodation was due to a breakdown in the interactive process.") (internal quotations omitted). Accordingly, plaintiff's argument that she should have been accommodated by being assigned only administrative duties fails.

In sum, the court finds that plaintiff has failed to meet her burden of establishing an ADA violation because a reasonable jury could not find that she was qualified to do her job or that defendant failed to accommodate her.

### C. Plaintiff has Failed to Present Evidence of Discrimination

Title VII forbids employment discrimination based on race or national origin. 42 U.S.C. § 2000e-(a)(1). The ADEA forbids employment discrimination based on age. 29 U.S.C. § 633a. The ADA forbids employment discrimination based on disability. 42 U.S.C. § 12101. Generally, a plaintiff making such claims can defeat summary judgment in one of two ways. First, plaintiff can point to sufficient evidence in the record, whether called direct, indirect or circumstantial, from which a reasonable jury could conclude that defendant fired her because of

her race or national origin, age, or disability. This is the standard way to defeat a motion for summary judgment, as recently reiterated by the Seventh Circuit in Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764 (7th Cir. 2016) (overruling the use of a "convincing mosaic" test). Under this test, "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. . . . Relevant evidence must be considered and irrelevant evidence discarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" Id. at 765.

As Ortiz makes clear, however, id. at 766, a plaintiff may also choose to defend a summary judgment motion using the burden-shifting framework created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, the plaintiff must first present evidence to establish a prima facie case that: (1) he is a member of a protected class; (2) he was satisfying his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. If the plaintiff satisfies this initial burden, then the employer must articulate a legitimate non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. See Andrews v. CBOCS W., Inc., 743 F.3d 230, 234 (7th Cir. 2014) (overruled in part by Ortiz, 834 F.3d at 765–66). Regardless of which method is used, "the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." Bass v. Joliet Pub. Sch. Dist. No. 86, 746 F.3d 835, 840 (7th Cir. 2014).

In the instant case, the answer to that fundamental question is no. First, plaintiff's only evidence of discrimination is that she was not allowed to return to her position at Patrick Henry after she lost school-level position protection, nearly six months after her medical leave began, and only after she failed to respond to a request for more information regarding a potential need for further accommodation. The record contains not a hint of evidence that the decision to remove plaintiff from her school-level position protection was based on plaintiff's race, age or disability. Importantly, plaintiff continued to work for defendant, albeit at a different school, from February 11, 2015, until she retired on June 22, 2016.

Nor can plaintiff's case survive under the McDonnell Douglas framework. Plaintiff has no problem establishing that she is in a protected class and that she suffered an adverse employment action. That, however, is as far as plaintiff gets. Despite her contention to the contrary, the fact that plaintiff had a positive work history does nothing to demonstrate that she was satisfying her employer's legitimate expectations when she lost school-level position protection. At that time, plaintiff was not working at all, had multiple medical restrictions that prevented her from doing her job, and had not requested an extension of leave.

Additionally, plaintiff has not identified any similarly situated employee outside of her protected classes who was treated more favorably. Indeed, the one person whom plaintiff compares herself to, a younger, non-African-American teacher's assistant that was hired while plaintiff was on leave, but not as plaintiff's substitute,[8] was not similarly situated to plaintiff.

---

[8] Gutierrez testified that Patrick Henry had an influx of special needs students during the 2013–2014 school year and was granted approval to hire an additional special education teacher's assistant during that year, bringing the total number to three, including plaintiff's substitute. The number of special needs students decreased in the 2014–2015 year, however, and the school reduced the number of special education teacher's assistants back down to two.

13

Plaintiff has failed to identify even one employee who, like her, attempted to return from medical leave with multiple restrictions, but was allowed to return to light duty or a different position rather than being offered extended leave.  Plaintiff's argument that she need not identify such an employee misses the point.  Plaintiff argues that her June 19, 2014 return to work request form, which defendant denies receiving, cleared her to work with minimal restrictions.  At that point, however, plaintiff had already lost her school-level position protection, at least in part due to her own failure to communicate with defendant.  Plaintiff's argument does nothing to identify a similarly situated employee outside of her protected classes who was treated more favorably.

Moreover, even if plaintiff could establish a prima facie case, there is no evidence that defendant's legitimate non-discriminatory reason for removing plaintiff from her position - that her position protection had expired - is false.  Plaintiff argues that defendant's explanation is pretextual because defendant cannot explain why plaintiff was removed from her position when she had accommodation requests outstanding or why plaintiff was not considered for a teacher's assistant position at Patrick Henry during the 2014–2015 school year.  Plaintiff is incorrect.

As for plaintiff not being considered for a teacher's assistant position at Patrick Henry during the 2014–2015 school year, defendant has provided a simple explanation: she did not apply.  Plaintiff's claim that she should have "bumped" a less-senior teacher's assistant, even without applying, is incorrect for the simple reason that she had lost her school-level position protection.  Accordingly, even if plaintiff would have had a right to "bump" another employee, she lost any potential right to do so when she lost her school-level position protection.  As for plaintiff's claim that she was removed from her school-level position protection with outstanding accommodation requests, that is simply incorrect.  Plaintiff had submitted a return to work

14

request form on April 2, 2014. Bentley instructed plaintiff to contact Bentley if she sought an ADA accommodation. Plaintiff admits that she failed to do so. Consequently, plaintiff did not have an outstanding accommodation request when she lost her school-level position protection on May 12, 2014. Plaintiff has not demonstrated pretext.

Although plaintiff need not prove pretext, at the summary judgment stage, she must show that "the evidence is such that a reasonable jury could return a verdict for [plaintiff]." Liberty Lobby, Inc., 477 U.S. at 248. In the instant case there is no evidence from which a jury could conclude that plaintiff lost her school-level position protection because of prohibited discrimination. Accordingly, the court grants defendant's motion.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Doc. 32) is granted.


**ENTER:**     **June 8, 2017**

_____

**Robert W. Gettleman
United States District Judge**

15